PAMELA BONDI
Attorney General
HARMEET K. DHILLON
Assistant Attorney General
MICHAEL E. GATES
Deputy Assistant Attorney General
CARRIE PAGNUCCO
Chief, Housing and Civil Enforcement Section
AMIE S. MURPHY (NYRN 4147401)
Deputy Chief, Housing and Civil Enforcement Section
MAX LAPERTOSA (ILBN 6276608)
Trial Attorney, Housing and Civil Enforcement Section
Civil Rights Division
    U.S. Department of Justice
    950 Pennsylvania Avenue NW – 4CON
    Washington, DC 20530
    Tel.: (202) 598-9726
    Fax: (202) 514-1116
    Email: Max.Lapertosa@usdoj.gov

Attorneys for Plaintiff, United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FATHI ABDULRAHIM HARARA and NATIVE GROUNDS, LLC, d/b/a JERUSALEM COFFEE HOUSE,<br><br>    Defendants. | CASE NO.<br><br>**COMPLAINT** |

The United States brings this action to enforce Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a – 2000a-5, against Fathi Abdulrahim Harara and Native Grounds, LLC, doing business as the Jerusalem Coffee House (collectively, "Defendants"), for discriminating against Jewish customers based on race and religion, and alleges as follows:

**I.    JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42

U.S.C. § 2000a-5(a).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are located there and because a substantial part of the events giving rise to the United States' claims occurred there.

3. Divisional Assignment: Assignment to the San Francisco or Oakland Division is proper under Civil Local Rules 3-2(c) and (d) because a substantial part of the events or omissions giving rise to the United States' claims occurred in Alameda County.

## II. PARTIES

4. Plaintiff is the United States of America.

5. Defendant Fathi Abdulrahim Harara ("Harara") is the owner and operator of the Jerusalem Coffee House, located at 5443 Telegraph Avenue in Oakland, California. Harara resides in Brentwood, California.

6. Defendant Native Grounds, LLC, is a California corporation whose address is the same as the Jerusalem Coffee House and whose business type is listed as "coffee shop." Harara is the Chief Executive Officer, Chief Financial Officer, and Secretary of Native Grounds, LLC.

## III. FACTUAL ALLEGATIONS

### A. The Jerusalem Coffee House

7. The Jerusalem Coffee House ("coffee house") is a business establishment that is open to the general public. The coffee house began operating in September or October 2023.

8. The coffee house sells coffee, other drinks, and food, including baked goods, cookies, and focaccia sandwiches. These items may be consumed on the premises at tables and chairs located inside the coffee house and outside on the sidewalk.

9. The coffee house also hosts public events for exhibition or entertainment, including cultural events and programs, musicians, and artists.

10. Among the drinks the coffee house sells are "Iced In Tea Fada," an apparent reference to "intifada," and "Sweet Sinwar." The coffee house announced these new drinks on Instagram on the one-year anniversary of the October 7, 2023 Hamas terrorist attacks on Israel. Yahya Sinwar was the leader

COMPLAINT
CASE NO:                                    2

of Hamas and has been described as "chief architect" and "mastermind" of the October 7, 2023 Hamas attacks.[1]

11. The exterior side wall of the coffee house has, or has had, at least four inverted red triangles painted on it. Inverted red triangles have been used as a symbol of violence against Jews, and synagogues and Jewish homes in the United States have had inverted red triangles spraypainted on them as part of anti-Semitic vandalism.

12. The coffee house is located on the premises of the East Bay Community Space ("EBCS"), which regularly hosts events that are open to the general public for exhibition or entertainment, including performances, meetings, workshops, and film screenings.

13. EBCS and the coffee house both occupy a one-story building located at the corner of Telegraph Avenue and 55th Street, in north Oakland. The building is listed by the Alameda County Assessor as a single parcel with the same owner. Although EBCS has its own entrance on 55th Street, it is connected to the coffee house via an open interior passageway. EBCS's website also contains a link to and description of the coffee house.

14. The coffee house is a "place of public accommodation" within the meaning of 42 U.S.C. §§ 2000a(b)(2), (3), and (4). EBCS is a "place of public accommodation" within the meaning of 42 U.S.C. § 2000a(b)(3).

15. Both the coffee house's and EBCS's operations "affect commerce" within the meaning of 42 U.S.C. § 2000a(c).

**B. Defendants' Unlawful Refusal to Serve Michael Radice**

16. Michael Radice is a Los Angeles resident who directs a nonprofit organization in Oakland that works on behalf of individuals and families impacted by incarceration. Mr. Radice spends at least one day per week working in Oakland.

17. Mr. Radice is Jewish.

---

[1] *See* Frank Gardner, "Yahya Sinwar: Who was the Hamas Leader?" *BBC*, Oct. 17, 2024, https://www.bbc.com/news/world-middle-east-67473719; Daniel Estrin & Willem Marx, "Who Was Hamas Leader Yahya Sinwar?" *NPR*, Oct. 17, 2024, https://www.npr.org/2024/10/17/nx-s1-5155887/hamas-yahya-sinwar-israel-gaza.

COMPLAINT
CASE NO:                                  3

18. On or about the afternoon of June 10, 2024, Mr. Radice traveled from his office in Oakland to EBCS for the purpose of viewing the establishment for a fundraising event for his organization. Mr. Radice had never been to the coffee house before.

19. Mr. Radice was wearing a dark-blue baseball cap with a light-blue Star of David and white Hebrew lettering. The Hebrew phrase on his cap stated, "Am Yisraeli Chai," which translates as, "The people of Israel live."

20. Mr. Radice approached EBCS via Telegraph Avenue, where the coffee house is located. As he approached, a man sitting at a sidewalk table in front of the coffee house asked Mr. Radice, unprompted, "Are you a Jew?" Mr. Radice answered that he was.

21. The man then asked, "Are you a Zionist?" Mr. Radice declined to respond.

22. The man then began shouting numerous accusations at Mr. Radice, including that he was complicit in Israel's military actions in the Gaza Strip following the October 7, 2023 Hamas attacks and guilty of "killing children."

23. At no time did Mr. Radice offer his opinion or position on Israel, its actions, or any other issue. Other than his baseball cap, Mr. Radice was not wearing anything that would indicate his religious or political beliefs.

24. Mr. Radice began to walk away. As he did, the man stood up and asked, "Where are you going?"

25. While walking away from the coffee house, Mr. Radice saw another man, whom he later learned was Harara, walk out of the coffee house and speak to the man, and the two went inside.

26. On the afternoon of August 3, 2024, Mr. Radice returned to EBCS to attend the fundraiser for his organization. He arrived early and entered the coffee shop to purchase a cookie, which he hoped would be seen as a sign of goodwill. Mr. Radice was not wearing the baseball cap he wore on his previous visit, nor anything else that would indicate his religious or political beliefs.

27. Working behind the counter of the coffee house that day were the man who previously asked Mr. Radice if he was a "Jew," Harara, and a third employee.

28. Before Mr. Radice could place his order or say anything of substance, the man from the previous encounter stated, "You're the guy with the hat. You're the Jew. You're the Zionist. We don't want you in our coffee shop. Get out."

29. Harara then asked Mr. Radice if he intended to purchase anything. Mr. Radice responded that he was only there to make a purchase.

30. One of the employees responded by telling Mr. Radice to "get out" and gestured to the front door. Mr. Radice immediately left the coffee house.

31. Harara and the two other employees followed Mr. Radice outside, yelling "Jew" and "Zionist" at him. Mr. Radice retreated north on Telegraph Avenue towards 55th Street. When he saw that Harara and the employees were continuing to pursue him, Mr. Radice stepped into the middle of 55th Street and behind a parked car to escape the men.

32. Shortly thereafter, a member of Mr. Radice's organization's board of directors arrived for the fundraiser and was parking his car on the other side of 55th Street. Mr. Radice approached him and told him what had happened. As they spoke, Harara and his employees continued to yell insults and epithets at Mr. Radice, which did not end until Mr. Radice and the board member entered EBCS.

33. At no point during his interaction with Harara and his employees did Mr. Radice say anything indicating his political beliefs or positions, whether with respect to Israel or any other issue.

34. Mr. Radice has not been back to the coffee house or EBCS since this incident.

**C. Defendants' Unlawful Refusal to Serve Jonathan Hirsch and His Five-Year-Old Son**

35. Jonathan Hirsch resides in Oakland with his wife and three young children.

36. Mr. Hirsch is Jewish.

37. On Saturday, October 26, 2024, around midday, Mr. Hirsch and his five-year-old son were having lunch at Casper's, a well-known Oakland hot dog stand located at 5440 Telegraph Avenue, across the street from the coffee house.

38. Mr. Hirsch was wearing a blue baseball cap with a white Star of David on it. The cap was a replica of a 1938 cap used by the Hebrew Orphans Asylum, a Jewish orphanage in New York City that sponsored baseball teams.

COMPLAINT
CASE NO:                                5

39. Other than this cap, Mr. Hirsch was wearing nothing that would indicate his religious or political beliefs.

40. After eating, Mr. Hirsch and his son needed to use the bathroom. Casper's does not have bathrooms, and staff there directed Mr. Hirsch to the coffee house.

41. At this time, Mr. Hirsch did not know Mr. Radice and was not aware of the previous incidents involving Mr. Radice.

42. Mr. Hirsch and his son crossed Telegraph Avenue and entered the coffee house, where he ordered a coffee. The employee who served Mr. Hirsch was not Harara. Mr. Hirsch and his son then went to the back of the coffee house to use the bathroom.

43. After using the bathroom, Mr. Hirsch and his son sat down at a table with a chess board in the back of the coffee house and began playing chess.

44. Within minutes of sitting down, Harara—who did not identify himself—confronted Mr. Hirsch. He demanded to know whether Mr. Hirsch was a "Zionist" and whether he was wearing a "Jewish star." After briefly walking away, Harara returned and demanded that Mr. Hirsch and his son leave the premises.

45. At no time while in the coffee house did Mr. Hirsch say anything that would indicate his political beliefs or positions on any issue, including Israel.

46. Mr. Hirsch asked whether Harara worked there. Harara falsely accused Mr. Hirsch of "causing a disruption" and "trespassing." He threatened to call the police if Mr. Hirsch did not leave. Mr. Hirsch responded that Harara should call the police and would wait for them to arrive. While in the coffee house, Harara told Mr. Hirsch, "You need to leave," or variations on this demand, at least fifteen times.

47. After Mr. Hirsch said that he would wait for the police to arrive, Harara walked into EBCS and approached an EBCS employee named Rena Raven Don. He asked Ms. Don to help remove Mr. Hirsch.

48. Ms. Don walked into the coffee house and approached Mr. Hirsch and his son. Mr. Hirsch told Ms. Don that he believed Harara was discriminating against him because he was Jewish. Ms. Don initially told Mr. Hirsch that he should accede to Harara's demand, noting that he had entered a

"Palestinian" business. Mr. Hirsch explained that he was unwilling to validate illegal discrimination by leaving the coffee house.

49. Ms. Don later told the Oakland police that Mr. Hirsch "wasn't trying to start a conflict" and "was being discriminated against because of his hat."

50. At 12:55 pm, two uniformed Oakland police officers arrived. Mr. Hirsch spoke to the officers and explained that he was being ordered to leave because he was Jewish and wearing a Star of David on his baseball cap, which he considered a sign of his religion.

51. Harara responded, "This is a private business, and I reserve the right to refuse not to serve anyone I don't want to," and again demanded that Mr. Hirsch leave the premises. He repeatedly demanded that the officers remove Mr. Hirsch and arrest him for trespassing, at one point requesting that they physically restrain Mr. Hirsch face-down on the sidewalk in front of his young son.

52. The officers did not arrest Mr. Hirsch. The police report for this incident states that "no crime occurred" and "this is being documented as a hate incident."

53. Nevertheless, the officers requested that Mr. Hirsch speak with them outside. As they left the coffee house, Harara said, "Bye bye! Are you a Zionist? Bye bye!" Later, he added, "I love Jewish people. I love them. I love them. Fuck Israel. Fuck Zionists. Fuck Zionists."

54. When Mr. Hirsch asked why Harara was directing these epithets at him, Harara responded, "Because I feel like it." When Mr. Hirsch asked Harara whether he asks every customer whether he or she is a "Zionist," Harara responded, "Yeah, I do."

55. Harara does not, in fact, ask all customers if they are "Zionists."

56. Although Mr. Hirsch ordered and paid for a coffee, it was never served to him.

57. Harara followed Mr. Hirsch and the officers outside and continued to spew insults and epithets at both Mr. Hirsch and his young son. These included repeatedly calling Mr. Hirsch a "bitch," a "dog," and a "piece of shit." Harara even told Mr. Hisch's son, "You're dad's a bitch." The situation ended only after two Oakland police sergeants arrived.

### IV. CAUSE OF ACTION: TITLE II OF THE CIVIL RIGHTS ACT OF 1964

58. The United States re-alleges and incorporates by reference the allegations set forth above.

59. Defendants' actions as described above constitute a pattern or practice of resistance to the full and equal enjoyment by Jewish individuals of rights secured by Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*, and this pattern or practice is of such a nature and is intended to deny the the full exercise of such rights.

## V. PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court enter an Order:

1. Declaring that Defendants' discriminatory policies and practices violate Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*;

2. Enjoining Defendants, their agents, employees, successors, and all other persons in active concert or participation with them, from engaging in any act or practice which, on the basis of race or religion, denies or abridges any rights secured by Title II of the Civil Rights Act of 1964; and

3. Requiring Defendants, their agents, employees, successors, and all other persons in active concert or participation with them, to take such affirmative steps as may be necessary to remedy the effects of past unlawful conduct and prevent the recurrence of discriminatory conduct in the future.

The United States further prays for such additional relief as the interests of justice may require.

Dated: June 9, 2025

Respectfully submitted,

s/ Pamela Bondi
PAMELA BONDI
Attorney General

s/ Harmeet K. Dhillon
HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

s/ Michael E. Gates
MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief, Housing and Civil Enforcement Section

s/ Max Lapertosa
AMIE S. MURPHY
Deputy Chief
MAX LAPERTOSA
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section

COMPLAINT
CASE NO:                                              9

**DECLARATION PURSUANT TO LOCAL RULE 5(i)(3)**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that each of the other signatories to this Complaint have concurred in the filing of the document.

                                                      s/ Max Lapertosa