Walter Riley SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
walterriley@rrrandw.com
(510) 451-1422
(510) 451-0406 (fax)

Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

**ATTORNEYS FOR DEFENDANTS FATHI
ABDULRAHIM HARARA AND NATIVE GROUNDS INC.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FATHI ABDULRAHIM HARARA, et al.,<br><br>Defendants. | Case No.  3:25-cv-04849-SI<br><br>**NOTICE AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6); MEMORANDUM OF LAW IN SUPPORT**<br><br>Hearing: Sept. 12, 2025, at 10:00 a.m. |

PLEASE TAKE NOTICE that on September 12, 2025, at 10:00 a.m., before the

Honorable Susan Illston, defendants Fathi Abdulrahim Harara and Native Grounds Inc.[1] will and

hereby do move to dismiss Plaintiff's Complaint.

Defendants' motion is based on Federal Rule of Civil Procedure 12(b)(6), for the

Complaint's failure to state a claim upon which relief can be granted. The allegations in the

Complaint, even if accepted as true, do not amount to a "pattern or practice" that would constitute

a violation of Title II of the Civil Rights Act of 1964.

---

[1] The corporate defendant is named incorrectly as an LLC in the Complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff, the United States government, seeks an injunction against Defendants, who it alleges own the Jerusalem Coffee House in Oakland, claiming that they are engaged in a "pattern or practice" of discriminating against Jewish customers in violation of Title II of the Civil Rights Act of 1964. Plaintiff's claim is based on two incidents of alleged discrimination in which Defendants supposedly ejected customers they believed to be Jewish. But even assuming Plaintiff's allegations are true, as Defendants must for purposes of their Motion to Dismiss for failure to state a claim, they do not constitute a "pattern or practice" that would amount to a violation of Title II.

The Supreme Court has made clear that a pattern-or-practice claim requires "more than the mere occurrence of isolated . . . or sporadic discriminatory acts." *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). The discrimination alleged must be "the company's standard operating procedure [that is] the regular rather than the unusual practice." *Id*. These two isolated, somewhat bizarre incidents simply do not constitute a pattern or practice of denying "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation" to Jewish customers. 42 U.S.C. § 2000a.

### II.    BACKGROUND

Plaintiff alleges that defendant Harara has owned and operated the Jerusalem Coffee House (JCH or the café) since September or October 2023. Compl. ¶¶ 5, 7. JCH sells coffee, other drinks, and food, including baked goods, cookies, and focaccia sandwiches. *Id*. ¶ 8. It also hosts public events for exhibition or entertainment, including cultural events and programs, musicians, and artists. *Id*. ¶ 9. Plaintiff further alleges that JCH discriminated against two customers because they are Jewish. *Id*. § III C and D. Michael Radice visited the café on August 3, 2024. *Id*. ¶ 26. The second customer, Jonathan Hirsch, visited the café on October 26, 2024. *Id*. ¶ 37.

The Complaint alleges Radice was going to visit the East Bay Community Space, a neighboring facility in the same building as the café in June 2024. Compl. ¶ 18. He was wearing a

blue baseball cap with a Star of David on it and Hebrew lettering when, according to the Complaint, someone sitting outside the café asked him if he was a Jew, if he was a Zionist, and accused him of being complicit in Israel's atrocities in Gaza. *Id.* ¶¶ 19-22. Radice is not alleged to have visited the café that day or have had any intention of doing so.

On Radice's next visit to EBCS in August 2024, he did visit the café, without the hat he had apparently worn in June. *Id.* ¶ 26. The Complaint claims that before he could order anything, someone from behind the counter said: "You're the guy with the hat. You're the Jew. You're the Zionist. We don't want you in our coffee shop. Get out." *Id.* ¶ 28.  Next, according to Plaintiff, Harara and two other workers followed Radice as he left the café yelling "Jew" and "Zionist" at him on the street. *Id.* ¶ 31.

In the Hirsch incident, the Complaint alleges that he entered the café wearing a blue baseball cap with a Star of David on it. *Id.* ¶¶ 38, 42. Unlike the previous incident with Radice, the café workers served Hirsch, he and his son used the bathroom, then went to the back of the café and played chess. *Id.* ¶¶ 42-43. The Complaint asserts that Harara later confronted Hirsch, asked him if he was a Zionist and whether he was wearing a Jewish star. *Id.* ¶ 44. Harara then told him to leave, according to the Complaint, which Hirsch refused. *Id.* ¶¶ 44, 46. Hirsch remained in the café until the police arrived, who escorted him from the café. *Id.* ¶ 50.

## III.    ANALYSIS

### A. Motion to Dismiss Standard

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A dismissal under rule 12(b)(6) "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). In this case, Plaintiff has failed to allege

facts sufficient to support a cognizable legal theory, even when accepting the factual allegations in the complaint as true and construing them in the light most favorable to Plaintiff. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023).

### B.   No Facts Support a "Pattern or Practice" Under Title II

The allegations in the Complaint, even if true, do not constitute a "pattern or practice" that would violate Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000a-5. A pattern-or-practice claim requires "more than the mere occurrence of isolated . . . or sporadic discriminatory acts." *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). A pattern or practice means that the discrimination alleged must be "the company's standard operating procedure [that is] the regular rather than the unusual practice." *Id.*; *see also In re W. Dist. Xerox Litig.*, 850 F. Supp. 1079, 1085 (W.D.N.Y. 1994) ("[T]he burden of establishing a pattern or practice of discrimination is not an easy one to carry."). The *Teamsters* case involved the Attorney General's authority under Title VII, though courts have applied its analysis to the pattern-or-practice authority in other civil rights statutes. Barbara Schwabauer, *The Attorney General's Pattern-or-Practice Authority: A Critical Tool for Civil Rights Enforcement*, 70 DOJ J. Fed. L. & Prac. 5 (2022) (citing *United States v. Lansdowne Swim Club*, 894 F.2d 83, 88 (3d Cir. 1990) (applying the *Teamsters* case to Title II public accommodations pattern-or-practice claim)).

The Supreme Court's decision in *Teamsters* was informed by the legislative history of the term "pattern or practice," the words of which are identical in Title VII and Title II. *Teamsters*, 431 U.S. at 336 n.16 (specifically referring to 206(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-5). That history makes clear that a "pattern or practice would be present only where the denial of rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature." *Id*. That is, a defendant must be "repeatedly and regularly engaged in acts prohibited by the statute." *Id*.

The Complaint alleges that Defendants discriminated against Michael Radice and Jonathan Hirsh in separate incidents. It alleges that in June 2024, Radice was going not to the café, but to the East Bay Community Space, a neighboring facility in the same building. Compl. ¶ 18. The Complaint does not allege that Defendants own, operate, or have any control over

EBCS. Radice was wearing a blue baseball cap with a Star of David on it and Hebrew lettering while going to EBCS when, according to the Complaint, someone sitting outside the café asked him if he was a Jew, if he was a Zionist, and accused him of being complicit in Israel's atrocities in Gaza. *Id*. ¶¶ 19-22. As disturbing as these allegations would be if true, they do not reflect any denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation," since Radice had no intention of availing himself of the accommodations at the café. *See* 42 U.S.C. § 2000a.

On Radice's next visit to EBCS in August 2024, he did visit the café, without the hat he had apparently worn in June. *Id*. ¶ 26. The Complaint claims that before he could order anything, someone from behind the counter said: "You're the guy with the hat. You're the Jew. You're the Zionist. We don't want you in our coffee shop. Get out." *Id*. ¶ 28. The Complaint further claims that Harara and two other workers followed Radice as he left the café yelling "Jew" and "Zionist" at him on the streets of Oakland. *Id*. ¶ 31. Defendants vehemently deny that these vile accusations occurred, but assume they are true only for purposes of this Motion to Dismiss.

In the other incident, the Complaint alleges that Hirsch entered the café wearing a blue baseball cap with a Star of David on it. *Id*. ¶¶ 38, 42. Unlike the incident with Radice, the workers served Hirsch, he and his son used the bathroom, then went to the back of the café and played chess. *Id*. ¶¶ 42-43. Thus, by the Complaint's own terms, serving Hirsch, allowing him to use the bathroom, and allowing him to go the back of the café and play chess belies a pattern or practice of discriminating against Jewish customers.

The Complaint further alleges that Harara later confronted Hirsch, asked him if he was a Zionist and whether he was wearing a Jewish star. *Id*. ¶ 44. Harara then allegedly told him to leave, which Hirsch refused. *Id*. ¶¶ 44, 46. Hirsch remained in the café until the police arrived, who escorted him from the café. *Id*. ¶ 50.

These two isolated incidents do not constitute a "pattern or practice" within the meaning of Title II or the Supreme Court's interpretation of a pattern or practice in the *Teamsters* case. In the Radice incident, workers at the café supposedly called him a Jew and a Zionist before he could order anything, immediately told him to leave the café, and yelled that he was a Jew and

Zionist as they chased him in the streets. In the Hirsch incident, no one called him a Jew or derided his religion but instead told him to leave because he was causing a disruption and trespassing after he had been served, used the bathroom, and played chess. *Id*. ¶ 46.

The two dissimilar incidents involving Radice and Hirsch were anything but "repeated, routine, or of a generalized nature." *Teamsters*, 431 U.S. at 336 n.16. Indeed, the incidents in the Complaint are the definition of isolated and sporadic that simply do not meet the requirement for Plaintiff's pattern-or-practice claim that discriminating against Jewish customers at the café was the "standard operating procedure [that is] the regular rather than the unusual practice." *Id*. at 336.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.


Respectfully submitted,

/s/ Glenn Katon
Glenn Katon