Walter Riley SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
walterriley@rrrandw.com
(510) 451-1422
(510) 451-0406 (fax)

Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEYS FOR DEFENDANTS FATHI ABDULRAHIM HARARA AND NATIVE GROUNDS INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FATHI ABDULRAHIM HARARA AND NATIVE GROUNDS, LLC, d/b/a JERUSALEM COFFEE HOUSE, <br><br> Defendants. | Case No. 3:25-cv-04849-SI <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

Defendants Fathi Abdulrahim Harara and Native Grounds Inc. file this Reply in Support of Motion to Dismiss for Failure to State a Claim, based upon the following:

**I.   INTRODUCTION**

Plaintiff's Opposition to Defendants' Motion to Dismiss does not point to facts in the Complaint that make out a viable Title II claim. Instead, the opposition mischaracterizes parts of the Complaint and fails to provide case law to support its claim. Defendants motion should,

therefore, be granted.

## II.     ARGUMENT

### A. Plaintiff Mischaracterizes the Allegations in the Complaint to Try to Overcome Its Deficiencies

Plaintiff asserts that "on three separate occasions" Defendants denied service to identifiably Jewish customers. The Complaint does not allege three occasions, just two. *See, infra*, footnote 3. The Opposition further asserts that "Defendants referred to both Messrs. Radice and Hirsch as "Jews" before ordering them to leave." Opp. to Mot. to Dismiss, at 7. There is no allegation that anyone referred to Hirsch as a "Jew."

### B. Number of Incidents and Nature of Incidents

It does not appear that the parties significantly dispute the applicable law. Defendants have not argued that two incidents of alleged discrimination can never constitute a pattern or practice under Title II. That is why Defendants' motion relies so heavily on the Supreme Court's interpretation of a pattern or practice as "more than the mere occurrence of isolated . . . or sporadic discriminatory acts" and that the discrimination alleged must be "the company's standard operating procedure [that is] the regular rather than the unusual practice." *See* Mot. to Dismiss (ECF 16), at 2/11-14; 4/5-24; 5/25-26; 6/4-8.

Rather than arguing that the number of incidents is insufficient, Defendants argue that the alleged incidents are isolated, bizarre, and dissimilar. Even a superficial review of the allegations reveals the absence of a standard operating procedure or a regular rather than unusual practice. According to Plaintiff, Michael Radice only needed to walk past the café with a hat that had the Star of David and some Hebrew characters on it to be asked by a supposed employee sitting outside if he is a Jew and accuse him of being complicit in Israel's genocide in Gaza. When Radice went inside the café almost two months later, the alleged employee supposedly recognized him, yelled at him calling him a "Jew" and a "Zionist," immediately refused him service, and told him to get out of the café. According to Plaintiff's conclusory assertion, the alleged treatment of Mr. Radice was pursuant to an "enunciated and implemented" practice of refusing service to Jewish people. Opp. to Mot. to Dismiss, at 7/6.

The incident involving Jonathan Hirsh three months later was markedly different. Notwithstanding the supposed policy of refusing service to Jewish people, Hirsch entered the café wearing a baseball cap with the Star of David on it and no one yelled at him or called him a "Jew" or a "Zionist." Employees simply took his order as they do for every customer.[1] *Id*. at 4/15-18. He was obviously walking around the café wearing his hat since he took his son the restroom then went to the back of the café to play chess with his son. *Id*.[2] During this whole time, employees surely saw his cap with the Star of David on it, yet no one refused him service, told him not to use the restroom, or insisted that he leave rather than hang out and play chess with his son as he did. It is true that the Complaint alleges that Defendant Harara questioned Hirsch about his hat later, but the chronology of the allegations belies a standard operating procedure of refusing to serve Jewish people.

Plaintiff's comparison of Defendants' supposed policy of discrimination to a "Whites Only" sign is grossly inapt. Opp. to Mot. to Dismiss, at n.2.[3] Defendants' alleged conduct here is, at most, inconsistent and sporadic. Notably, in Oakland, one of the most diverse cities in the country, Plaintiff does not allege discrimination based on any customer wearing a yarmulke, tichel, payes, Star of David or Chai jewelry, or any other outward indication of a customer's Jewish faith. Plaintiff points only to two customers wearing baseball caps in bizarre confrontations. Such alleged incidents are precisely the type that the Supreme Court has held do

---

[1] Contrary to Plaintiff's assertion, Defendants do not emphasize the fact that they served Hirsch to imply that any other denial of equal access would be permissible. Defendants' point, which Plaintiff does not refute in the Complaint or their Opposition, is that a café that had a policy of not serving Jewish people would not serve someone wearing a Star of David hat and allow them to use the bathroom and play chess.

[2] Plaintiff alleges incorrectly that the bathroom is at the back of the café. In fact, it is in a hallway connected to the middle of the café.

[3] It is not clear why Plaintiff takes issue with Defendants' assertion that Radice did not intend to visit the café on June 10, 2024. The Complaint plainly states that he was going to the East Bay Community Space, not the café, and makes no mention of an intention to obtain service at the café, which it certainly would allege if true since Title II requires a denial of the full and equal enjoyment of goods and services. Compl. ¶¶ 18, 20 (going to EBCS); 42 U.S.C. § 2000a (denial of full and equal enjoyment of services). Plaintiff further asserts falsely that even Defendants describe the Radice incident as a "disturbing" anti-Semitic attack. Opp. to Mot. to Dismiss, at n.2. Defendants' actual assertion was that "[a]s disturbing as these allegations would be if true" they would not amount to a Title II violation. Mot. to Dismiss, at 5/4-5.

not support a pattern-or-practice violation under Title II. By contrast, the repugnant sign Plaintiff describes is a clear and constant indication of a refusal of service.

The main case on which Plaintiff relies to support its assertion that two incidents are sufficient to constitute a pattern or practice shows how the conduct Plaintiff alleges does not approach a Title II violation.[4] In *United States v. Pelzer Realty Co., Inc.*, 484 F.2d 438 (5th Cir. 1973), the government alleged that Defendants refused to sell homes to two Black men. *Id*. at 441. Defendants told them if they sold them the houses, they would have a difficult time selling the rest of the houses in the development and suggested they could build the men houses at the same price in a Black neighborhood. *Id*. Defendants further told the men that if they tried to sue them, they would delay the case in court so long that they would no longer want the houses. *Id*. Defendants' scheme to not sell the homes to the Black men got more intricate, with false promises of waiving closing costs and creating sham contracts so Defendants could tell the men the houses were off the market. *Id*. at 443. The multi-faceted plot and clarity of the sellers' actions to deny the homes to the two Black buyers stand in stark contrast to the instant case, where the government fails to allege any such detailed, clear intention.

Plaintiff makes several other arguments to conjure a pattern or practice that strain credulity. First, Plaintiff maintains that the "inexplicable, sustained anger and hostility" showed toward Radice and Hirsch "strongly suggests animus against identifiably Jewish customers and a practice of refusing to serve them." Opp. to Mot. to Dismiss, at 8. At the motion-to-dismiss stage, Defendants are confined to the allegations in the Complaint. Thus, Plaintiff argues that because its own pleading does not explain Defendants' anger, that is an indication of a practice of refusing to serve Jewish people. Nonsense.

Plaintiff further argues that Harara's statements that he is the owner of a private business and reserves the right to refuse service to anyone show that the Radice and Hirsch incidents "were part of a deliberate, non-sporadic practice of deliberately refusing to serve customers, including on the basis of the customer's religion, a protected class under the Civil Rights Act." *Id*. As the

---

[4] The *Pelzer* case involved a Title VIII violation; however, the parties agree that the "pattern or practice" standard is generally the same across civil rights statutes.

REPLY ISO MOTION TO DISMISS Case No. 3:25-cv-04849-SI    Page 4

signs in half the retail establishments in the country make clear, shop owners do have the right to exclude anyone they want – except for an impermissible reason. That Harara repeated that familiar refrain cannot be reasonably interpreted as a deliberate refusal of service based on religion.

Finally, Plaintiff points to numerous opaque, conclusory allegations in the Complaint to support its pattern-or-practice claim. It asserts that the "Iced in Tea Fada" drink is an apparent reference to intifada. It does not explain why that would be an indication of antisemitism (it's not). It also asserts that the "Sweet Sinwar" is named after Yahya Sinwar, who has been described as a leader of the October 7, 2023 Hamas terrorist attacks on Israel. It provides no basis for the conclusion that the drink is named after him and similarly does not explain why naming a drink after someone who supposedly led attacks against Israel would be antisemitic. The unexplained conclusions continue with the assertions that red triangles "have been interpreted" to be a symbol of violence against Jewish people. It does not explain who interpreted that a red triangle, which is part of the flag of Palestine, a country that had a substantial Jewish population, to mean violence against Jewish people. The opposition brief further asserts without support or explanation that the triangles have "at times" been marked on synagogues as antisemitic vandalism. Many profanities and symbols are used in racist and antisemitic vandalism. Presumably, the government does not maintain that things like the anarchy symbol, a cross, or a drawing of a middle finger are antisemitic symbols because they have been marked on synagogues. The real kicker is the government's disclaimer that "the United States does not take a stance on the interpretation of these terms or symbols in isolation." Plaintiffs' conclusory assertions should not be credited.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss the Complaint for Failure to State a Claim pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon